IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

| | |
|---|---|
| MELVIN DUMMAR, | |
| | Civil No. 1:06-CV-00066 BSJ |
| Plaintiff, | |
| vs. | **MEMORANDUM OPINION & ORDER** |
| WILLIAM RICE LUMMIS and FRANK WILLIAM GAY, | |
| Defendants. | **FILED**<br>CLERK, U.S. DISTRICT COURT<br>January 8, 2007 (4:28pm)<br>DISTRICT OF UTAH |

\* \* \* \* \* \* \* \* \*

Plaintiff Melvin Dummar ("Dummar") filed this lawsuit on June 12, 2006, asserting claims for fraud, unjust enrichment, and federal and state racketeering violations against defendants William Rice Lummis ("Lummis") and Frank William Gay ("Gay") (collectively "Defendants"). This matter is currently before the court on Defendants' separate motions to dismiss each of Dummar's claims for failure to state a claim upon which relief may be granted.[1] At the November 2, 2006 hearing on Defendants' motions, Dummar was represented by Stuart L. Stein of the Stein Law Firm and Knute A. Rife of the Rife Law Offices; Lummis was represented

---

[1] Gay's motion to dismiss was filed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. (F.W. Gay's Mot. to Dismiss First Amend. Compl. and All Claims Alleged Against Him with Prejudice, filed August 7, 2006, (dkt. no. 19).) Lummis' motion to dismiss was filed pursuant to Fed. R. Civ. P. 12(b)(6), as well as Fed. R. Civ. P. 9(b) and 9(f) for failure to plead with particularity, Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and Fed. R. Civ. P. 12(b)(3) for improper venue (or alternatively 28 U.S.C. §§ 1404(a) and 1406(a) for transfer of venue). (Def. William Rice Lummis' Mot. to Dismiss First Amend. Compl. for (1) Lack of Personal Jurisdiction, (2) Improper Venue or, Alternatively, to Transfer Venue, and (3) Failure to State a Claim, filed August 7, 2006, (dkt. no. 17).) During the November 2, 2006 hearing on Defendants' motions to dismiss, however, Lummis withdrew the personal jurisdiction and venue grounds for his motion and asked the court to dismiss Dummar's claims on the grounds that they fail to state a claim. (Transcript of Hearing dated November 2, 2006 (dkt. no. 42) at 76-78.) Accordingly, the court has considered and evaluated Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6).

1

by Randy L. Dryer, Gordon L. Roberts and James T. Blanch of Parsons Behle & Latimer; and Gay was represented by Peggy A. Tomsic and Eric K. Schnibbe of Tomsic & Peck. After hearing the parties' respective arguments, the court took the matter under advisement. The court has carefully considered the parties' briefs and arguments, as well as the law and facts relevant to Defendants' motions to dismiss. Now being fully advised, the court renders the following Memorandum Decision and Order.

## MOTION TO DISMISS STANDARD

In considering Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6), this court must determine whether the factual allegations in Dummar's First Amended Complaint for Fraud, Unjust Enrichment, Federal and State RICO Violations ("Amended Complaint"), if true, would entitle him to a legal remedy. "'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'"[2] In deciding a motion to dismiss, the court must "accept[] all well-pleaded facts as true and in the light most favorable to the nonmoving party."[3] However, conclusory allegations without supporting factual averments need not be accepted.[4] "'A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[5]

---

[2] *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

[3] *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1212 (10th Cir. 2006).

[4] *See Dunn v. White*, 880 F.2d 1188, 1190 (10th Cir. 1989), *cert denied*, 490 U.S. 1059 (1990).

[5] *Robey*, 434 F.3d at 1212 (quoting *Sutton*, 173 F.3d at 1236).

## DUMMAR'S FACTUAL ALLEGATIONS

In accordance with the applicable standard of review, the court must assume that Dummar's well-pleaded factual allegations are true. Thus, the following facts are taken from Dummar's Amended Complaint.

During the last week in December of 1967, Dummar was driving in the late evening in rural Nevada.[6] Dummar pulled off of the main road for a short rest and found a man lying in the road.[7] The man was clearly in distress.[8] Dummar offered to help the man and, at the man's request, drove him to the Sands Hotel in Las Vegas, Nevada.[9] During the ride to the Sands Hotel, the man identified himself as Howard Hughes, the industrialist.[10] After Dummar left the Sands Hotel in December of 1967, he never again had contact with the man who had identified himself as Mr. Hughes.[11]

Howard R. Hughes, Jr. ("Hughes") died in 1976.[12] Shortly after Hughes' death, a stranger delivered an envelope to Dummar at his place of employment in Willard, Utah.[13] The envelope was addressed to David O. McKay, the late- President of the Church of Jesus Christ of Latter-

---

[6] (Amended Complaint, filed July 5, 2006, (dkt. no. 11) at ¶ 7.)

[7] (*Id.*)

[8] (*Id.*)

[9] (*Id.*)

[10] (*Id.*)

[11] (*Id.* at ¶ 8.)

[12] (*Id.* at ¶ 10.)

[13] (*Id.*)

3

Day Saints (the "LDS Church").[14] Although the envelope was addressed to McKay, Dummar steamed open the envelope and found a hand-written document purporting to be Hughes' last will and testament.[15] Dummar delivered the envelope to the LDS Church's headquarters in Salt Lake City, Utah and left it on a secretary's desk, intending it to be delivered to the then-President of the LDS Church, Spencer W. Kimball.[16]

On April 29, 1976, the LDS Church filed the handwritten document purporting to be Hughes' holographic will for probate in the Clark County District Court in Las Vegas, Nevada.[17] Among other bequests, the purported holographic will bequeathed 1/16th of Hughes' estate to Dummar and 1/16th of Hughes' estate to Lummis.[18] And after bequeathing other significant portions of Hughes' estate to other various individuals and entities, the purported will bequeathed the residuary estate to the key men of Hughes' companies at the time of his death.[19] Gay, who was not a relative of Hughes, was the effective Chief Operating Officer of all of Hughes' holdings at the time of Hughes' death.[20]

A probate jury trial ensued in the Clark County District Court in Nevada to determine whether the handwritten document was the valid holographic will of Hughes.[21] Dummar was an

---

[14](*Id.*)

[15](*Id.* at ¶ 11.)

[16](*Id.* at ¶ 12.)

[17](*Id.* at ¶ 13.)

[18](*Id.* at ¶¶ 3, 4.)

[19](*Id.* at ¶ 3, Ex. A.)

[20](*Id.* at ¶ 5.)

[21](*Id.* at ¶ 14.)

4

in-court proponent of the probate of the purported will and was represented by counsel during the jury trial.[22] Lummis and Gay were also personally involved in the jury trial and were opponents of the purported will.[23]

Before the jury trial began, the parties participated in pretrial discovery, took depositions, and produced documents.[24] During the jury trial, witnesses testified and exhibits were admitted for the purpose of determining the validity of the will.[25] For instance, Dummar testified that he found Hughes in rural Nevada and gave him a ride to Las Vegas in December of 1967.[26] The opponents of the purported holographic will, on the other hand, offered contrary testimony that Hughes did not leave his residence at the Desert Inn for years at a time, including in December of 1967.[27] Similarly, the proponents of the will presented an expert witness who testified that the handwritten document was in Hughes' handwriting, while the opponents produced a contrary expert who opined that the purported will was not in Hughes' handwriting.[28]

After considering the evidence and proffered testimony, the Nevada jury rendered its verdict that the handwritten document was not entirely written, signed, and dated by Hughes.[29]

---

[22](*Id.* at ¶¶ 14, 39.)

[23](*Id.* at ¶¶ 4, 16, 19-20.)

[24](*Id.* at ¶ 6.)

[25](*Id.* at ¶¶ 14, 18, 21-22, 32.)

[26](*Id.* at ¶¶ 29, 34.)

[27](*Id.* at ¶¶ 18, 21.)

[28](*Id.* at ¶ 32.)

[29](*Id.* at ¶ 4; *see* Memo. Supp. Def. William Rice Lummis' Mot. to Dismiss First Amend. Compl. for (1) Lack of Personal Jurisdiction, (2) Improper Venue, and (3) Failure to State a Claim ("Lummis' Supp. Memo."), filed August 7, 2006, (dkt. no. 18) at Ex. 1 (Verdict); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (stating that where a "document is referred to in the complaint and is central to the plaintiff's

The Nevada court entered its judgment affirming the jury's verdict in June of 1978 and, accordingly, the alleged holographic will was not probated.[30] Had the jury determined that the handwritten document was in fact the valid will of Hughes, Dummar would have been entitled to 1/16th of Hughes' estate, which would have amounted to $156 million.[31]

## ANALYSIS

Dummar filed this action against Lummis and Gay on June 12, 2006, approximately twenty-eight years after the jury in the Hughes probate case rendered its verdict and the Nevada court entered its judgment in June of 1978. In his Amended Complaint, Dummar asserts the following four claims against Defendants: (1) common law fraud; (2) common law unjust enrichment; (3) violation of the federal RICO statute, 18 U.S.C. § 1964(c); and (4) violation of the Nevada RICO statute, N.R.S. § 207.470.1. Each of Dummar's claims is based upon the alleged wrongful conduct of Defendants and others during, or in relation to, the Nevada probate trial.

Specifically, Dummar contends that within three years of initiating this action, he learned that the following wrongful conduct occurred in relation to the Nevada probate trial: (1) Defendants pressured witnesses to falsely testify, either in depositions or at trial, that Hughes did not leave his Desert Inn residence for years at a time, including in December of 1967; (2) flight logs and records were altered or destroyed for the purpose of concealing evidence of Hughes' trips away from the Desert Inn; (3) the jury foreman was possibly induced by Defendants to share

---

claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss").)

[30](Amended Complaint (dkt. no. 11) at ¶ 4; Lummis' Supp. Memo. (dkt. no. 18) at Ex. 2 (Judgment).)

[31](Amended Complaint (dkt. no. 11) at ¶¶ 3, 15, 20, 33-34, 36, 43, 46.)

his typed notes from the trial with the other jurors and was forgiven certain gambling debts that he owed to a Hughes-owned casino; (4) a reporter was threatened so that he would not interview the jury foreman and investigate the reasons for the jury's verdict; and (5) witnesses were intimidated such that they refused to testify or testified uncooperatively on behalf of the proponents of the alleged will.

Dummar claims that the written document that was at issue in the Nevada probate trial, and that is attached as Exhibit A to his Amended Complaint in this matter, is Hughes' valid will. Dummar argues that the alleged misconduct described above caused the jury to determine that the written document was not Hughes' valid will and caused "[t]he Nevada court hearing the probate matter [to] wrongfully reject[] the Holographic Will as genuine and determine[] it would not be admitted into probate."[32] Each of Dummar's claims is based upon the injury that he suffered when Hughes' alleged will was not probated. And for each of his claims, Dummar prays for a judgment in "an amount equal to the $156 million dollars he would have been entitled to under [Hughes'] Holographic Will," had it been probated. For his fraud and unjust enrichment claims, Dummar seeks "interest from 1978 to the date of the judgment [in this case]."[33]

After a careful review of Dummar's allegations, the court determines that the doctrine of issue preclusion, otherwise referred to as collateral estoppel, bars each of Dummar's claims in this case. The doctrine of issue preclusion bars a party from relitigating an issue of fact or law

---

[32](*Id.* at ¶ 4; *see* ¶¶ 20, 33-34, 36, 43, 46.)

[33](*Id.* at ¶¶ 34, 36; *see id.* at ¶¶ 43, 46.)

that was previously litigated and determined by a valid and final judgment.[34] In order for issue preclusion to apply, the following four elements must be met: (1) the party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior case; (2) the judgment in the prior case must have been on the merits and have become final; (3) the issue decided in the prior case must be identical to the one presented in the current case; and (4) the issue must have been actually, fully, and fairly litigated in the prior case.[35] The factual allegations in Dummar's Amended Complaint show that each of these four elements is present with regard to each of Dummar's claims in this case.

First, Dummar alleges that he was a party to the Nevada probate case wherein the jury determined that the written document at issue in that case, which is the same document that Dummar has attached to his Amended Complaint in this case, is not the valid holographic will of Hughes.[36]

Second, Dummar does not dispute that the Nevada probate case resulted in a final

---

[34] *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Executive Mgmt., Ltd. v. Ticor Title Ins. Co.*, 963 P.2d 465, 473 (Nev. 1998); *3D Constr. & Dev., L.L.C. v. Old Standard Life Ins. Co.*, 117 P.3d 1082, 1087 (Utah Ct. App. 2005).

[35] *Murdock v. Springville Mun. Corp.*, 982 P.2d 65, 70 (Utah 1999); *Executive Mgmt., Ltd.*, 963 P.2d at 473; see *Vitkum v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir. 1997) ("A federal court sitting in diversity, as we do here, must apply the substantive law of the forum state, including its choice of law rules."); *Jaramillo v. Burkhart*, 999 F.2d 1241, 1243 (8th Cir. 1993) ("Collateral estoppel is an issue of substantive law requiring the application of state law in diversity actions."); *Jeff v. Stubbs*, 970 P.2d 1234, 1251 n.14 (Utah 1998) (citing *Morris v. Sykes*, 624 P.2d 681, 684 (Utah 1981), for the holding that where no significant differences exist between Utah law and the law of another state, the court may properly apply Utah law in the absence of an affirmative showing that the law of the other state is different).

[36] (Amended Complaint (dkt. no. 11) at ¶ 14 ("The in-court proponents of the Holographic Will were Plaintiff Melvin Dummar and the Holographic Will's nominated Personal Representative, Noah Dietrich.").)

judgment on the merits.[37]

Third, Dummar alleges that the issue of whether the written document attached to his Amended Complaint is the valid holographic will of Hughes – an issue that is necessary to the outcome of all four of Dummar's claims against Defendants – was previously presented to and decided by the jury in the Nevada probate case.[38] Dummar's allegations also admit that the jury in the Nevada case, in connection with determining whether the written document was Hughes' valid will, also considered the issues of whether Hughes left his residence at the Desert Inn in December of 1967 and whether Dummar found Hughes deserted in rural Nevada and drove him to the Sands Hotel.[39]

During the November 2, 2006 hearing on Defendants' motions, Dummar argued that he is not asking the court to determine the validity of the written document alleged to be Hughes' will and generally argued that his claims in this case are distinct from that issue. However, a review of Dummar's Amended Complaint, his opposition to Defendants' motions to dismiss, and his arguments during the November 2, 2006 hearing makes clear that the injury Dummar claims to have suffered, and the damages he seeks in this case, are directly related to what he claims he was entitled to under Hughes' alleged holographic will. Each of Dummar's claims against Defendants depends upon a determination that the written document at issue in the Nevada case, as well as in this case, is in fact Hughes' valid holographic will. Without such a determination,

---

[37](*Id.* at ¶ 4; Transcript of Hearing dated November 2, 2006 (dkt. no. 42) at 42-43 (Dummar's counsel indicating that Dummar did not appeal the Nevada court's judgment); *see Greene v. Eighth Judicial Dist. Ct.*, 990 P.2d 184, 186 (Nev. 1999) ("[T]he normal meaning of the term 'final judgment,' . . . is 'one which puts an end to an action at law.'").)

[38](Amend. Complaint (dkt. no. 11) at ¶¶ 4, 14, 18, 32, 34, 36.)

[39](*Id.* at ¶¶ 21-22, 34.)

9

this court has no independent basis upon which to find that Dummar would have been entitled to anything from Hughes' estate, regardless of the alleged misconduct by Defendants in connection with the Nevada probate trial. Because Dummar's only claim of entitlement to Hughes' estate is by way of the alleged holographic will, Dummar simply cannot recover on his claims against Defendants unless the holographic will is deemed to be Hughes' valid will. The court, therefore, finds that the third required element of issue preclusion is met in this case because the issue decided in the Nevada probate trial – the validity of the holographic will – is identical to an issue presented in this case.

Fourth, despite Dummar's arguments in his opposition to Defendants' motions to dismiss and during the November 2, 2006 hearing that Defendants' alleged wrongful conduct in the Nevada probate trial prevented him from presenting essential evidence to the jury and from having a full and fair opportunity to litigate the validity of the purported holographic will, the court finds that Dummar's allegations establish that the "fully and fairly litigated" element of issue preclusion is met in this case.

The "fully and fairly litigated" element of issue preclusion "stem[s] 'from fundamental due process and requires that litigants have their day in court.'"[40] "'For purposes of due process, the parties must receive notice reasonably calculated, under all the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections.'"[41]

---

[40] *3D Constr. & Dev.*, 117 P.3d at 1087 (quoting *Copper State Thrift & Loan v. Bruno*, 735 P.2d 387, 391 (Utah Ct. App. 1987)); *see Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt.*, 713 F.2d 1477, 1486 (10th Cir. 1983); *Hammer v. I.N.S.*, 195 F.3d 836, 842 (6th Cir. 1999); *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1068 (8th Cir. 1997); *Kunzelman v. Thompson*, 799 F.2d 1172, 1176 (7th Cir. 1986).

[41] *3D Constr. & Dev.*, 117 P.3d at 1087 (quoting *Copper State Thrift & Loan*, 735 P.2d at 391).

At the time that Hughes' purported will was filed in the Nevada court for probate in April of 1976, Dummar knew that the jury in that case would be determining the authenticity of the alleged holographic will and, consequently, would be considering whether Dummar had found and rescued Hughes in the Nevada desert – the event that would make sense of Hughes' purported bequest to Dummar. Dummar's allegations establish that he was represented by counsel and actively participated in pretrial discovery and the Nevada probate trial. Dummar testified before the jury regarding his encounter with the man who identified himself as Hughes and produced evidence and witnesses, including a handwriting expert, during the trial. Dummar's allegations also establish that he knew, through his participation in pre-trial discovery and during the trial, that the opponents of the will were testifying and producing evidence to show that Hughes did not leave his residence at the Desert Inn at the time that Dummar claimed to have rescued Hughes.

Moreover, Hughes had the opportunity to appeal the Nevada court's judgment after it was entered in June of 1978, although he chose not to. Additionally, Dummar does not cite any authority for the proposition that the alleged misconduct of Defendants, which Dummar argues constituted a fraud on the court, is a sufficient grounds upon which to allow a collateral attack on the Nevada court's final judgment, particularly considering that Rule 60(b) of the Nevada Rules of Civil Procedure recognizes the availability of a direct attack of that judgment through "an independent action . . . to set aside a judgment for fraud upon the court."[42] Under these circumstances, there is not a sufficient basis upon which this court can determine that Dummar has been denied his due process right to have his day in court. The court, therefore, finds that the

---

[42]Nev. R. Civ. P. 60(b); *see Plotner v. AT&T Corp.*, 224 F.3d 1161, 1170 (10th Cir. 2000).

11

fourth element of issue preclusion is met.

For the foregoing reasons, the court determines that through this action, Dummar is attempting to circumvent the Nevada court's final judgment and to, either directly or indirectly, relitigate his entitlement to a portion of Hughes' estate. The court finds that this action constitutes a collateral attack on the Nevada court's prior final judgment and that each of Dummar's claims against Defendants are barred by the doctrine of issue preclusion.[43] This result not only reduces unnecessary litigation and fosters reliance on adjudication, but is consistent with this court's obligation to give the Nevada court's final judgment the same preclusive effect and full faith and credit that the Nevada state courts would be required to give the same judgment.[44]

Finally, although this court is not the appropriate forum for consideration of Dummar's claims that Defendants' alleged misconduct constituted a fraud on the Nevada court,[45] this court notes the difference between fraud on the court and the consequence to a person resulting from fraud on the court. The second depends on the first. And where a final judgment of another court still stands, the duty of this court is to give that judgment full faith and credit. Issue preclusion is one way of doing just that. The court's determination "is not merely a matter of comity but also reflects practical considerations: here, the [Nevada] state court has the advantage over all other courts, both in deciding whether fraud occurred in its own prior proceedings and in determining whether [Dummar] adequately pursued discovery efforts in that case."[46]

---

[43] *See Markoff v. New York Life Ins. Co.*, 549 P.2d 330, 332 (Nev. 1976).

[44] *See Allen*, 449 U.S. at 95-96.

[45] Nev. R. Civ. P. 60(b); *Plotner*, 224 F.3d at 1170; *Green v. Citigroup, Inc.*, 68 Fed. Appx. 934, 936 (10th Cir. 2003); *Lundborg v. Phoenix Leasing, Inc.*, 91 F.3d 265, 272 (1st Cir. 1996).

[46] *Lundborg*, 91 F.3d at 272.

## CONCLUSION

Because the court finds that Dummar's claims against Defendants in this case are barred by the existence of the Nevada court's final judgment, which at this point in time is entitled to full faith and credit by this court, the court determines that the defects in Dummar's Amended Complaint could not be cured by amendment. Thus, for the reasons set forth in this Memorandum Opinion and Order, Defendants' motions to dismiss (dkt. nos. 17 and 19) are hereby GRANTED with prejudice.

DATED this 8 day of January, 2007.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge