IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

MELVIN DUMMAR,

        Plaintiff,

vs.

WILLIAM RICE LUMMIS and
FRANK WILLIAM GAY,

        Defendants.

Civil No. 1:06-CV-00066 BSJ

ORDER

\* \* \* \* \* \* \* \* \*

This matter is before the court on Plaintiff Melvin Dummar's Motion for Reconsideration of Memorandum Opinion and Order on Defendants' Motions to Dismiss (dkt. no. 46) (hereinafter "Motion for Reconsideration"), which was filed on January 22, 2007. The court has determined that oral argument, although requested by Dummar, would not materially assist the court in the determination of Dummar's Motion for Reconsideration.

In his Motion for Reconsideration and supporting memorandum, Dummar argues that in granting William Rice Lummis' and Frank William Gay's (collectively "Defendants") motions to dismiss, the court committed clear error by: (1) abstaining from considering Dummar's claims; (2) dismissing Dummar's claims on the basis of issue preclusion; and (3) dismissing Dummar's claims with prejudice.[1] Because Dummar has not identified any relevant change in the law, presented any new evidence, or demonstrated any manifest error of law, the court hereby denies

---

[1] (Motion for Reconsideration (dkt. no. 46); Plaintiff Dummar's Memorandum in Support of Motion for Reconsideration of Memorandum Opinion and Order on Defendants' Motions to Dismiss (dkt. no. 49) (hereinafter "Memorandum in Support of Motion for Reconsideration").)

Dummar's Motion for Reconsideration.[2] And because Dummar's claims regarding the court's alleged error appear to be based in large part on his misunderstanding of the court's Memorandum Opinion & Order (dkt. no. 43) (hereinafter "Opinion"), the court will specifically address each of his main arguments.

Dummar's position that this court dismissed his claims "on an abstention basis," and his reliance on cases dealing with federal courts' dismissal of actions for lack of subject matter jurisdiction in support of his argument that this court erred, clearly show that Dummar misapprehends the court's decision.[3] This court did not abstain from considering Dummar's claims. And this court did not dismiss Dummar's claims for lack of subject matter jurisdiction. Instead, the court exercised its jurisdiction and directly considered each one of Dummar's claims. Accepting all of Dummar's well-pleaded facts as true and in the light most favorable to him, the court determined that Dummar could not prove such facts as would entitle him to relief on any of his claims because each of his claims was barred by the doctrine of issue preclusion. Because each of Dummar's claims failed under Fed. R. Civ. P. 12(b)(6), the court accordingly dismissed

---

[2] *See Adams v. Reliance Std. Life Ins. Co.*, 225 F.3d 1179, 1186 n.5 (10th Cir. 2000); *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[3] Several of the cases Dummar relies on in support of his position that this court abstained from considering his claims are cases where a court determined, unlike this court, that it lacked subject matter jurisdiction to consider a plaintiff's claims or that it was obligated to abstain from considering a plaintiff's claims based on an applicable abstention doctrine. *See Marshall v. Marshall*, __ U.S. __, 126 S. Ct. 1735, 1750, 164 L. Ed. 2d 480 (2006) (holding that the Ninth Circuit Court of Appeals erred in determining that the federal district court did not have subject matter jurisdiction over the petitioner's counterclaim for tortious interference, and specifically noting that the respondent's arguments concerning claim and issue preclusion "remain open for consideration"); *Ankenbrandt v. Richards*, 504 U.S. 689, 706 (1992) (holding that the Fifth Circuit Court of Appeals erred by affirming the district court's dismissal of the plaintiff's claims based on lack of subject matter jurisdiction and, alternatively, on the *Younger v. Harris* abstention doctrine); *Muncrief v. Mobil Oil Co.*, 421 F.2d 801, 803-04 (10th Cir. 1970) (holding that the district court improperly dismissed the plaintiff's claims for lack of subject matter jurisdiction); *Salvation Army v. Morris*, 421 F.2d 805, 806-07 (10th Cir. 1970) (holding that the district court erred in dismissing the case for lack of subject matter jurisdiction).

2

his claims.

Dummar's own allegations in his First Amended Complaint for Fraud, Unjust Enrichment, Federal and State RICO Violations (dkt. no. 11) (hereinafter "Amended Complaint"), in his Memorandum of Points and Authorities in Opposition to Defendants Lummis' and Gay's Motions to Dismiss (dkt. no. 27) (hereinafter "Memorandum in Opposition to Motions to Dismiss"), and in oral argument during the November 2, 2006 hearing, convinced the court that the required elements of issue preclusion were met in this case. Dummar was represented by counsel and actively participated in the probate proceedings in the Clark County, Nevada state court where the issue of the validity of Hughes' purported holographic will was litigated approximately thirty years ago. Significant to the court's decision was the fact that Dummar's claims all explicitly depend on an underlying assumption that the written document that was the subject of the Nevada probate trial, and that is attached to his Amended Complaint in this matter, is Hughes' valid will and would have been determined to be valid by the Nevada jury but for the wrongful actions of Defendants and others.[4] Nowhere in Dummar's Amended

---

[4]For his Fraud claim, Dummar alleges that Defendants and others "perpetrated a fraud upon Plaintiff Dummar and the Nevada District Court to deprive Plaintiff Dummar of a fair trial in Nevada and his rightful inheritance of $156 million from the Howard Hughes Estate." (Amended Complaint (dkt. no. 11), at ¶ 20.) Dummar also alleges that "[t]his fraud deprived Plaintiff Dummar of his rightful $156 million from the Howard Hughes Estate . . . " and prays for a "judgment sounding in fraud against the Defendants, jointly and severally, for an amount equal to the $156 million dollars he would have been entitled to under the Holgraphic Will, plus interest from 1978 to the date of the judgment, plus punitive damages . . . ." (*Id.* at ¶¶ 33-34.)

For his Unjust Enrichment claim, Dummar alleges that "the actions of Defendants . . . caused the jury to find that the valid Holographic Will was not admitted to probate and that Plaintiff was denied his rightful share of $156 million from the estate of Howard Robard Hughes, Jr. . . . ." (*Id.* at ¶ 36.) Dummar also "prays for judgment for unjust enrichment in an amount equal to the $156 million dollars he would have been entitled to under the Holographic Will, plus interest from 1978 to the date of the judgment." (*Id.*)

For his Federal RICO Civil Action claim, "Dummar prays for judgment for civil RICO under 18 U.S.C. § 1964.(c) for the injury of not obtaining the $156 million from the estate of Howard Robard Hughes, Jr., three times the actual damages as allowed under the statue, the costs of the suit, attorneys fees and any other relief this court deems just under these circumstances." (*Id.* at ¶ 43.)

For his Nevada RICO Civil Action claim, Dummar "prays for judgment for civil RICO . . . for the injury of not obtaining the $156 million from the estate of Howard Robard Hughes, Jr. . . . ." (*Id.* at ¶ 46.)

Complaint does he claim that Defendants' alleged wrongful conduct caused him to suffer a discrete injury or loss, separate and apart from his alleged entitlement under Hughes' purported holographic will. Instead, the only injury or loss that Dummar claims to have suffered and the remedy he seeks are directly related to his purported share of Hughes' estate as prescribed by Hughes' purported holographic will – the will that, after several months of litigation, the Nevada jury and court determined was not valid.

Given the court's explicit consideration of Dummar's claims and detailed discussion in its Opinion regarding its conclusion that the doctrine of issue preclusion bars Dummar's claims against Defendants in this matter, the court finds no merit in Dummar's arguments that the court abstained from considering his claims.[5]

Dummar also argues that the court erred in dismissing his claims on the basis of issue preclusion. Dummar claims that issue preclusion should not apply in this case because Defendants' alleged fraudulent conduct "kept from Dummar the information that Howard Hughes did, in fact, leave the Dessert [sic] Inn" and prevented him from having a full and fair opportunity to litigate the issues raised in the Nevada probate case.[6] However, as explained in the court's Opinion, the court determined that even accepting Dummar's allegations of Defendants' alleged misconduct as true, Dummar's own allegations were sufficient to establish the "fully and fairly

---

[5]Dummar argues that this court's citation to *Lundborg v. Phoenix Leasing, Inc.*, 91 F.3d 265, 272 (1st Cir. 1996), where the First Circuit found "that in the peculiar circumstances of this case, abstention is appropriate[,]" shows that this court abstained from considering his claims. (Reply to Defendants' Opposition to Plaintiff's Motion for Reconsideration of Memorandum Opinion and Order on Defendants' Ruling on Defendants' Motions to Dismiss (dkt. no. 52) (hereinafter "Dummar's Reply"), at 6-7.) Dummar, however, misinterprets the court's citation of *Lundborg*, which was based on the First Circuit's language regarding the practical considerations and advantages related to a state court evaluating whether fraudulent conduct occurred in the state court's prior proceedings.

[6](Memorandum in Support of Motion for Reconsideration (dkt. no. 49), at 6.)

4

litigated" element of issue preclusion, which stems from fundamental due process requirements.[7]

In this case, despite the alleged misconduct and concealment of evidence, Dummar was not prevented from discovering his claim and asserting such claim during the extended Nevada probate proceedings. According to Dummar, at the time that he received Hughes' purported will, he knew that "[t]his was the same Howard Hughes whose life [Dummar] saved in the desert nearly ten years before."[8] Dummar was represented by counsel and actively participated in both pretrial discovery and the Nevada probate trial where the parties presented evidence on the issue of whether Dummar found Hughes in rural Nevada (away from the Desert Inn) – the event that would make sense of Dummar's inclusion in Hughes' purported holographic will. Dummar presented his evidence regarding his encounter with Hughes in the desert and had knowledge of the testimony and evidence that the opponents of the holographic will presented during the probate trial. Dummar did not appeal the Nevada court's final judgment.

Based on Dummar's allegations, this court determined that Dummar had notice of the probate proceedings, had an opportunity to present his position, objections, evidence, and witnesses; to conduct cross-examination during the trial; and to appeal the court's final judgment; and that he therefore had his day in court. In the court's opinion, those facts were sufficient to establish the fully and fairly litigated element of issue preclusion in this case, especially because each one of Dummar's claims is based on the injury that he suffered when Hughes' alleged will

---

[7] *See Bolling v. Denver*, 790 F.2d 67, 68 (10th Cir. 1986) ("Although the 'doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate the claim or issue, . . . state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law.'" (quoting *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 480-81 (1982))).

[8] (Amended Complaint (dkt. no. 11), at ¶ 11.)

5

was not probated. Dummar has not cited any authority to establish that the fully and fairly litigated element of issue preclusion requires that a litigant have a perfect trial, or provides that a litigant may escape the defense of issue preclusion when after trial has ended and the time for appeal has passed, he discovers evidence that supports his position or rebuts his opponent's perjury.

Dummar also argues that the court erred in dismissing his claims on the basis of issue preclusion because his fraud claim states an entirely new cause of action not previously tried in the Nevada probate proceeding and does not depend on the validity of the holographic will.[9] The court acknowledges that the exact claims included in Dummar's Amended Complaint, including his fraud claim, were not previously litigated in the Nevada probate trial.[10] However, the court disagrees with Dummar's position that "[t]he admission or non-admission of the holographic will to probate has 'no bearing on the underlying [fraud] torts alleged'" by Dummar.[11] As discussed above and in the court's Opinion, Dummar's claims are dependent on this court determining or

---

[9](Memorandum in Support of Motion for Reconsideration (dkt. no. 49), at 5; Dummar's Reply (dkt. no. 52), at 4-5.)

[10]The doctrine of issue preclusion applies to the relitigation of issues and "bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim[,]" while the doctrine of claim preclusion applies to the relitgation of a specific "claim or causes of action." *Park Lake Res. Ltd. Liab. Co. v. USDA*, 378 F.3d 1132, 1136 (10th Cir. 2004). Accordingly, the court's determination that Dummar's claims were barred by the doctrine of issue preclusion was based on the fact that the issue of the validity of the alleged holographic will, not Dummar's specific causes of action against Defendants, was litigated during the Nevada trial.

[11](Memorandum in Support of Motion for Reconsideration (dkt. no. 49), at 4 (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 706 (1992)).) Dummar's own allegations in his Amended Complaint support the court's determination that contrary to Dummar's position in his Memorandum in Support of Motion for Reconsideration, "the admission or non-admission of the holographic will to probate" in fact has a substantial bearing on Dummar's claims in this action. In addition to the examples set forth in footnote four of this Order, Dummar claims, for example, that "[t]he Nevada court hearing the probate matter wrongfully rejected the Holographic Will as genuine and determined it would not be admitted into probate." (Amended Complaint (dkt. no. 11), at ¶ 3.) Dummar also refers to himself as "a 1/16th beneficiary in the subject Last Will of Howard Robard Hughes, Jr." (Amended Complaint (dkt. no. 11), ¶ 3.)

assuming that Hughes' purported holographic will is valid because without such a determination or assumption, this court has no basis on which to find that Dummar was entitled to a portion of Hughes' estate and was therefore injured by Defendants' alleged misconduct, as he now claims. This court cannot evaluate Dummar's fraud claim and/or give Dummar relief for such fraud without ignoring the Nevada jury's verdict and the Nevada court's judgment that Hughes' alleged holographic will was invalid.

Under 28 U.S.C. § 1738, this court is required to give the same preclusive effect to the Nevada state court's judgment that the Nevada state courts would be required to give the judgment. Accordingly, Nevada law governs this court's application of the preclusive effect of the Nevada state court's final judgment in the Hughes probate proceeding. Nevada law, similar to Utah law, provides that issue preclusion applies when: (1) the issue decided in the prior litigation is identical to the issue presented in the current action; (2) the initial ruling was on the merits and became final; and (3) the party against whom the judgment is asserted was a party or in privity with a party to the prior litigation.[12] As discussed in detail in the court's Opinion, the court determined that these elements were met; that Dummar had a full and fair opportunity to litigate the issue of the validity of Hughes' will in the Nevada court; and that his claims were therefore barred by the preclusive effect of the Nevada court's final judgment, which this court is obligated to give full faith and credit.

With regard to Dummar's argument that he is entitled to his "day in court" on his fraud

---

[12]*Executive Mgmt., Ltd. v. Ticor Title Ins.Co.*, 963 P.2d 465 473-74 (Nev. 1998); *see 3D Constr. & Dev., L.L.C. v. Old Standard Life Ins. Co.*, 117 P.3d 1082, 1087 (Utah Ct. App. 2005). Although the required elements for issue preclusion under Nevada law, unlike Utah law, do not include a specific "fully and fairly litigated" element, a state court's judgment will not have preclusive effect in federal court unless the party against whom an earlier court decision is asserted had a full and fair opportunity to litigate the issue decided by the first court. *See Bolling*, 790 F.2d at 68.

claim, such a day should be had in a Nevada court, as indicated in the court's Opinion. First, as discussed above, this court is obligated to recognize and give credit to the existing final judgment of the Nevada court. Moreover, given several practical considerations, it is clear to the court that the Nevada state court, and not this court, is in the best position to evaluate Dummar's claims that Defendants engaged in fraud during the Nevada probate trial; that such fraud constituted a fraud on the Nevada court; and that but for such fraud, there would have been "a different result in the Nevada case."[13] The Nevada state court, which lies outside of this District, is informed by the records from the Hughes probate proceedings, has knowledge of how its proceedings are normally conducted, and has knowledge of what actually occurred in the Hughes probate proceedings. Such records and knowledge are essential to the consideration of whether fraud occurred in the Hughes probate proceedings and whether Dummar diligently sought the information that he claims was only recently discovered due to Defendants' fraud.

This brings the court to Dummar's final argument that the court committed error by dismissing his claims with prejudice. Through his claims against Defendants, Dummar is improperly attempting to circumvent the Nevada state court's judgment and achieve the same relief he sought, and failed to achieve, in the Nevada probate trial – recovery of the $156 million

---

[13]Dummar's argument that the newly discovered evidence – had it been presented to the Nevada jury – would have "led to a different result in the Nevada case" underscores the court's determination that Dummar's fraud claim should be considered, if at all, by the Nevada state court. (*See* Memorandum in Support of Motion for Reconsideration (dkt. no. 49), at 7.) First, Dummar's fraud claim requires a determination regarding whether "the newly discovered evidence" described by Dummar was not previously discovered due to Defendants' fraudulent conduct, and not for some other reason such as Dummar's oversight or non-diligence. Practical considerations, including the fact that the Nevada state court has custody of the record from the Hughes probate proceedings, support this court's conclusion that such a determination should be made by the Nevada state court. Next, assuming for the sake of argument that fraud is found, Dummar's fraud claim requires a determination regarding whether the will would have been probated in the absence of such fraud, thereby entitling Dummar to a portion of Hughes' estate. Only the Nevada court, and not this court, is in a position to determine whether "the newly discovered evidence" would in fact "have led to a different result in the Nevada case[,]" as Dummar argues.

that he was allegedly entitled to as a 1/16th beneficiary of Hughes' estate.[14] Given the existence of the Nevada court's judgment and this court's dismissal of Dummar's claims with prejudice, Dummar is barred from reasserting *in this court* the claims he brought against Defendants in this action until such time as that judgment is reconsidered and set aside by the Nevada state court. As far as this court is concerned, however, this court's dismissal of Dummar's claims in this case with prejudice does not preclude Dummar from attempting to bring an action in the Nevada state court to set aside the court's judgment for fraud upon the court.[15] Moreover, by dismissing Dummar's claims with prejudice, the court is not suggesting that Dummar could not, at some time in the future, state a claim in this court upon which relief could be granted if issue preclusion no longer applied. But given the existence of the Nevada court's judgment and the dependence of Dummar's claims on a determination that Dummar was in fact entitled to a portion of Hughes' estate – the issue decided against him in the Nevada state court – Dummar cannot bring such a claim in this court, at this time.

For at least these reasons, Dummar's Motion for Reconsideration (dkt. no. 46) is DENIED.

**SO ORDERED.**

DATED this 5 day of March, 2007.

BY THE COURT:

*(signature)*
Bruce S. Jenkins

---

[14] *See Markoff v. New York Life Ins. Co.*, 549 P.2d 330, 331-32 (Nev. 1976).

[15] *See* Nev. R. Civ. P. 60(b).